IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STEWART TITLE GUARANTY COMPANY, a Texas corporation,<br><br>    Plaintiff,<br><br><br><br>        vs.<br><br><br>SUMMIT ESCROW AND TITLE AGENCY, LCC, a Utah limited liability company,<br><br>      Defendant. | MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:11-CV-1061 TS |

This matter is before the Court on Defendant Summit Escrow and Title Agency, LLC's ("Summit") Motion to Dismiss, or in the Alternative, for Summary Judgment. As set forth below, the Court will deny Defendant's Motion.

## I. BACKGROUND

In its Complaint, Stewart Title Guaranty Company ("Stewart Title") brings claims against Summit for negligence and breach of contract. Summit, as an issuing agent, issued title policies in the name of Stewart Title to various property owners ("the Insureds"). Stewart Title alleges that Summit acted negligently by issuing the title policies without either satisfying a trust deed which encumbered the lots ("the Ames Trust Deed") or, in the alternative, listing the Ames Trust Deed as an exception on the policies when they were issued. After the title policies were issued, Ames filed suit to judicially foreclose the Ames Trust Deed ("the Ames lawsuit"). The Insureds

1

then filed suit against Stewart Title, which Stewart Title subsequently settled for $300,000. Stewart Title now seeks recovery from Summit for the $300,000 settlement, attorney's fees associated with the Ames lawsuit, and other associated costs.

Summit argues that Stewart Title's claims fail for a variety of reasons.  First, Summit argues that Stewart Title's own negligence caused the loss, as Stewart Title "settled title insurance claims with individuals that had rescinded the purchase of their property, and thus lacked standing under the title insurance policies to seek damages against Stewart Title."[1] Summit also argues that Stewart Title's claims should be dismissed because the parties already settled the dispute.  Finally, Summit argues that Stewart Title's claim for negligence is barred by the economic loss doctrine.

Summit's first and second arguments rely on facts presented in documents unrelated to Plaintiff's central claim, as does Defendant's Opposition to those arguments.  Both parties have been given an opportunity to present evidence on these issues.  Therefore, the Court will review these arguments under the Rule 56(d) standard for summary judgment.

Summit's third argument relies on the allegations in Stewart Title's Complaint and the underwriting agreement ("the Agreement").  The Agreement is central to Stewart Title's claim and Stewart Title has not disputed the authenticity of the copy of the Agreement submitted by Defendant.  Therefore, the Court will first evaluate Summit's third argument under the 12(b)(6) standard and consider the Agreement while conducting that analysis.

---

[1] Docket No. 7, at 1.

## II. MOTION TO DISMISS

A.    LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[2]  Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[3] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[4]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[5]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

---

[2] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[4] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[5] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[6] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.[7]

When considering the adequacy of a plaintiff's allegations in a complaint subject to a motion to dismiss, a district court not only considers the complaint, but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[8] Thus, "notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, '[a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[9] If documents outside the pleadings are presented by the parties, they must either be excluded from consideration by the Court or "the motion must be treated as one for summary judgment under Rule 56" and "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."[10]

B.    ANALYSIS

Summit contends that Stewart Title's claim for negligence should be barred by the economic loss doctrine.  Stewart Title alleges in its Complaint that "[p]ursuant to the . . . Agreement, Summit was appointed as Stewart Title's limited agent . . . for the purposes of issuing title policies in the name of Stewart Title and in accordance with its guidelines and

---

[7] *Iqbal*, 129 S. Ct. at 1949-50 (alteration in original) (internal quotation marks and citations omitted).

[8] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 and Supp. 2007)).

[9] *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[10] Fed. R. Civ. P. 12(d); *see also Teton Millwork Sales v. Schlossberg*, 311 F. App'x 145, 149 (10th Cir. 2009).

4

instructions."[11]  The Agreement provides that Stewart Title "shall defend at its own expense all actions and pay all losses under its title policies except as herein otherwise provided subject to the right of reimbursement in paragraph 5 hereof."[12]  Paragraph 5 provides:

> (a) On each loss under a title policy issue pursuant to this Agreement not due to [Summit's] negligence or fraud, [Summit] shall be liable to [Stewart Title] for the first Two Thousand Five Hundred Dollars ($2,500.00) of such loss.

> (b) On each such loss due to the fraud or intentional act or omission of [Summit] or its employees, representatives, or agents, or due to the negligence thereof, [Summit] shall be liable to [Stewart Title] for the entire amount of such loss including, but not limited to, attorney's fees, litigation expenses, and costs of settlement negotiations.[13]

Stewart Title alleges that Summit was negligent in that it issued four title policies without first satisfying or resolving the Ames Trust Deed or, in the alternative, listing the Ames Trust Deed as an exception on the issued policies.  Summit argues that Stewart Title's negligence claim is barred by the economic loss doctrine, as the tort duty is duplicative of the contractual duty.  Stewart Title responds that the economic loss doctrine does not apply because Summit Escrow owed an independent duty to Stewart Title due to their principal/agent relationship.

"[T]he economic loss rule prevents parties who have contracted with each other from recovering beyond the bargained-for risks."[14]  Utah law does recognize an independent duty exception to the economic loss rule.  As the Utah Court of Appeals recognized in *Interwest Construction v. Palmer*,[15] "tort liability is not always precluded just because there is a contract between a plaintiff and a defendant" and "[i]n some cases an act or omission resulting in a

---

[11] Docket No. 1, at 2.

[12] Docket No. 8 Ex. 2, at 1.

[13] *Id.* at 4.

[14] *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 230 P.3d 1000, 1006 (Utah 2010).

[15] 886 P.2d 92, 101 (Utah Ct. App. 1994), *aff'd*, 923 P.2d 1350 (Utah 1996).

breach of contract may also constitute a breach of duty that is not subsumed by the contract and may thereby give rise to a cause of action sounding in tort."[16]  The court then listed examples such as fraud, intentional and outrageous conduct, and independent tort actions rising from statutory requirements.  However, the independent duty exception to the economic loss rule is limited.  After articulating the exception, the court dismissed the plaintiff's tort claims because the plaintiff's "tort claims [were] the same as its contractual claims, i.e., [plaintiff] contends that [defendants] designed, manufactured, and supplied a defective product."[17]  The court stated that it dismissed the tort claims because they were expressly provided for in the contract and plaintiff "failed to demonstrate [defendants] breached any duties, rights, or obligations *independent* of those imposed upon them under contract."[18]  The Utah Supreme Court has similarly refused to apply this exception in a case where the alleged duty was merely "an independent duty to refrain from acting negligently."[19]

In a typical principal/agent relationship, a failure by one party to perform its duties "with reasonable care, competence, diligence and good faith" that results in damage to the second party entitles the second party "to recover for breach of the contractual duties."[20]  In the present action, the parties' Agreement provides that, for losses "due to the fraud or intentional act or omission of [Summit] or its employees, representatives, or agents, or due to the negligence thereof, [Summit]

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Sunridge*, 230 P.2d at 1007 n.8.

[20] *State Auto. & Cas. Underwriters v. Salisbury*, 494 P.2d 529, 532 (Utah 1972).

shall be liable to [Stewart Title] for the entire amount of such loss."[21]  Stewart Title's Complaint alleges that 1) "Summit owed a duty to Stewart Title to perform its duties with the care, skill, and diligence normally exercised by a title agent," 2) "Stewart Title relied on Summit to exercise the care, skill, and diligence normally exercised by a title agent," and 3) "[t]hrough its conduct . . . Summit breached its duties to Stewart Title."[22]

Because the negligence claim is indistinguishable from the parties' contractually created duties, the Court finds that Stewart Title's negligence claim is not independent from its breach of contract claim and the negligence claim is therefore barred by the economic loss doctrine.

### III. MOTION FOR SUMMARY JUDGMENT

A.    LEGAL STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine dispute of material fact and it is entitled to judgment as a matter of law.[23]  In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[24]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the

---

[21] Docket No. 8 Ex. 2, at 4.

[22] Docket No. 1, at 7.

[23] *See* Fed. R. Civ. P. 56(a).

[24] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

nonmoving party.[25]  In opposing a motion for summary judgment, "[t]he nonmoving party 'may not rest upon the mere allegations or denials of his pleadings' to avoid summary judgment."[26]

B.     APPLICATION

    1.     NEGLIGENCE BY STEWART TITLE

    Summit first argues that Stewart Title's loss came about due to Stewart Title's own negligence.  Summit, as an issuing agent, issued title policies in the name of Stewart Title to various property owners ("the Insureds").  The Insureds filed suit against Stewart Title, asserting that the Ames Trust Deed was a defect of title that led to the unmarketability of the Insureds' title.  Summit argues that "a condition precedent for Summit Escrow's liability is that its negligence caused the Insureds a loss under the Title Policies."[27]  Summit contends that the Insureds' purchase was rescinded in a separate action before this Court,[28] and that therefore the Insureds' damages claim no longer exists.  Because the purchase was rescinded, Summit argues, the Insureds no longer had standing to pursue any claim against Stewart Title and Stewart Title acted negligently when it paid the Insureds $300,000 to settle those claims.

    Stewart Title argues: 1) that the uncollectable default judgment that the Insureds obtained did not eliminate all of Stewart Title's liability under the title policies, and therefore Summit is still liable to Stewart Title for losses caused by Summit's negligence; 2) although the Court's

---

    [25] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

    [26] *Baccus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Anderson*, 477 U.S. at 248).

    [27] Docket No. 8, at 7.

    [28] *Muscat v. Prime West Jordanelle, LLC*, No. 2:08-cv-420-TS (D. Utah filed May 23, 2008).

Findings of Fact and Conclusions of Law mention rescission, the Default Judgment does not use the words "rescind" or "revoke" and does not void the warranty deeds or order that the Insureds convey the lots back to Prime West; and 3) extrinsic evidence supports a finding that the Insureds still own the lots, as they are identified as the record title owners of the lots by the Wasatch County Recorder's Office, the tax records for the lots show the Insureds as the owners, and the Insureds have continued to defend the Ames lawsuit related to the lots at their own expense.[29]  Stewart Title has also provided evidence in support of these contentions.

Because there are disputes of material fact as to whether Stewart Title's settlement with the Insureds was negligent, the Court will deny Summit's Motion with respect to this issue.

2.      SETTLEMENT OF CLAIMS

a.      Undisputed Facts

Summit's final argument is that the forgoing claims have already been resolved through a settlement between Stewart Title and Summit.  On July 15, 2011, Summit received an invoice for $2,500 from Stewart Title's claims billing department, which Summit argues constituted a settlement offer that it accepted.  Stewart Title argues that 1) Summit knew or should have known the invoice was sent in error, 2) the invoice was not a settlement offer from Stewart Title, and 3) no enforceable settlement agreement was formed by Summit's purported acceptance.

On January 4, 2010, Stewart Title notified Summit that Summit may have been negligent and therefore liable to Stewart Title for losses incurred under title policies issued to the Insureds. In February 2011, Stewart Title was considering entering into a settlement agreement with the Insureds, and discussed that possibility with Summit.  Summit did not object, and Stewart Title entered into a settlement agreement with the Insureds on February 19, 2011.  After the settlement

---

[29] Docket No. 14, at 9.

was effectuated, Adam Stricker—counsel for Stewart Title—sent a letter to James Gardner—counsel for Summit—demanding that Summit reimburse Stewart Title for its $360,936.41 loss, which included the $300,000 settlement with the Insureds and  attorneys' fees and costs from defending the Insureds prior to settlement.  Mr. Gardner responded to Mr. Stricker's letter, setting forth why Summit believed that it was not liable for the losses incurred.

Mr. Stricker then discussed with Mr. Gardner the possibility of entering into a tolling agreement, as Stewart Title would need to file suit against Summit prior to June 15, 2011, to comply with the statute of limitations.  On June 6, 2011, Stewart Title and Summit entered a tolling agreement.

On July 15, 2011, Stewart Title's billing department sent an invoice to Summit for $2,500—the amount that the Agreement dictates Stewart Title is to pay for losses incurred by Summit that are not due to Stewart Title's negligence.  This invoice was sent to John Hanlon at Summit by Stewart Title's Claims Billing Department.  It stated: "This letter is to inform you that the above referenced claim has been resolved. . . .  Based upon your agreement with Stewart, please pay the balance due as set out in the invoice below."[30]  The invoice showed a claim total of $361,246.41, including a $300,000 payment made shortly after the settlement agreement between Stewart Title and the Insureds was executed, and stated that the "balance due" by Summit for these claims was $2,500.[31]  The letter also states: "Please direct your payment to the attention of the Billing Administrator, National Legal Department, at the address above," and

---

[30] Docket No. 8 Ex. 10, at 2.

[31] *Id.* at 2-4.

10

concludes: "Thank you for your cooperation in resolving this matter."[32]  The letter does not refer

to the tolling agreement or any previous discussions between Mr. Gardner and Mr. Stricker.

On July 28, 2011, Mr. Gardner sent an email to Mr. Stricker, stating:

> Attached please find a letter that was recently received by Summit Escrow & Title
> ("Summit") noting that the claim has been resolved and seeking payment from
> Summit of $2,500.  Summit is hereby accepting Stewart Title's proposed
> resolution of this matter and will send a check in the amount of $2,500 and a
> mutual release to your attention that will bring this matter to a close—it will take
> us a couple of weeks to process the check.[33]

On August 5, 2011, Mr. Stricker responded to Mr. Gardner's email: "I have confirmed

that the invoice received by Summit was, in fact, a mistake and the result of a clerical error.

Summit will be receiving a corrected invoice shortly."[34]  Mr. Gardner responded by sending an

email stating that a check was on its way, which he assumed that Stewart Title would not cash

based on Mr. Stricker's previous email.

Stewart Title's Claims Billing Department subsequently sent Summit additional invoices,

one that was again for $2,500 on October 12, 2011, and another that Stewart Title represents was

a "corrected invoice" in the amount of $360,936.41, which was sent on November 10, 2011.[35]

On January 3, 2012, Summit sent a letter accepting the October 12 invoice and providing a check

for $2,500 for payment in full.  Stewart Title asserted that the October 12 invoice was also sent

in error and returned the check to Summit.

---

[32] *Id.*

[33] Docket No. 8 Ex. 11, at 1.

[34] Docket No. 14 Ex. PP, at 1.

[35] Docket No. 14 Ex. II, ¶¶ 30-32; 34-36.

      b.     Legal Standard

Under Utah law, "[t]he basic rules of contract formation are used to determine whether two parties have entered into an enforceable settlement agreement."[36]  Contract formation requires both offer and acceptance.[37]

> An offer is a manifestation of willingness to enter into an agreement, inviting another to accept.  An acceptance is a manifestation of assent to an offer, such that an objective, reasonable person is justified in understanding that a fully enforceable contract has been made. . . .  The conduct of both parties may also be considered in determining whether they entered into an agreement. [38]

Under Utah agency law, "an agent cannot make its principal responsible for the agent's actions unless the agent is acting pursuant to either actual or apparent authority."[39]

> Actual authority incorporates the concepts of express and implied authority.  Express authority exists whenever the principal directly states that its agent has the authority to perform a particular act on the principal's behalf.  Implied authority, on the other hand, embraces authority to do those acts which are incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent.  Implied authority is actual authority based upon the premise that whenever the performance of certain business is confided to an agent, such authority carries with it by implication authority to do collateral acts which are the natural and ordinary incidents of the main act or business authorized.  This authority may be implied from the words and conduct of the parties and the facts and circumstances attending the transaction in question.[40]

---

[36] *McKelvey v. Hamilton*, 2009 UT App 126, 211 P.3d 390, 397 (Utah Ct. App. 2009) (citation omitted).

[37] *Id.*

[38] *Id.* (quotations and citations omitted).

[39] *Zions First Nat. Bank v. Clark Clinic Corp.*, 762 F.2d 1090, 1094 (Utah 1988) (citation omitted).

[40] *Id.* at 1094-95 (citations omitted).

"In comparison, an agent's apparent or ostensible authority flows only from the acts and conduct of the principal."[41]  "Where corporate liability is sought for acts of its agent under apparent authority, liability is premised upon the corporation's knowledge of and acquiescence in the conduct of its agent which has led third parties to rely upon the agent's actions."[42]  The authority of the agent is not apparent "merely because it looks so to the person with whom he deals.  It is the principal who must cause third parties to believe that the agent is clothed with apparent authority."[43]

        c.      Analysis

Summit points to the invoice from Stewart Title's Claims Billing Department as an offer that Summit accepted through Mr. Gardner's July 28th email to Mr. Stricker.  Stewart Title argues that this offer was sent in error and that there was no meeting of the minds between the parties.  Summit contends that Stewart Title has provided no evidence that the individual in the claims billing department who sent the letter did so in error.  According to Summit, if that individual acted under actual or apparent authority, his or her actions would be binding on the principal, Stewart Title.

Stewart Title has asserted in its brief that its Claims Billing Department did not have authority to make settlement offers.  Stewart Title's counsel, Mr. Stricker, has provided an affidavit stating that "Stewart Title did not intend to send the invoice as a settlement offer to Summit Escrow.  Rather, the invoice was sent as a result of a clerical error."[44]  Stewart Title also

---

[41] *Id.* at 1095 (citing *City Elec. v. Dean Evans Chrysler–Plymouth*, 672 P.2d 89, 90 (Utah 1983)).

[42] *City Elec.*, 672 P.2d at 90.

[43] *Id.*

[44] Docket No. 14 Ex. II, ¶ 24.

cites as support for its argument that the amount listed in the invoice is much lower than the loss incurred, that the invoice does not reference previous communications between Mr. Stricker and Mr. Gardner, and that the invoice was not sent by Summit Title's counsel—Mr. Stricker.

The parties have cited to evidence supporting their positions.  As there are numerous disputes of material fact regarding the authority of the Claims Billing Department, whether there was a meeting of the minds between the parties, and whether the invoices were sent in error, the Court finds that a reasonable juror could conclude that there was no settlement between the parties.  Therefore, the Court will deny Summit's Motion with respect to this issue.

IV. CONCLUSION

Based on the forgoing, it is therefore

ORDERED that Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (Docket No. 7) is DENIED.

DATED   June 21, 2012.

BY THE COURT:

_____

TED STEWART
United States District Judge